# No. 22-50088

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SAMUEL JESUS AVILA,

*Defendant-Appellants.*

———————

Appeal from the United States District Court
for the Western District of Texas

———————

**Brief of Defendant-Appellant**

———————

MAUREEN SCOTT FRANCO
Federal Public Defender
Western District of Texas
727 E. César E. Chávez Blvd., B-207
San Antonio, Texas 78206
Tel.: (210) 472-6700
Fax: (210) 472-4454

KRISTIN L. DAVIDSON
Assistant Federal Public Defender

*Attorney for Defendant-Appellant
Samuel Jesus Avila*

## Certificate of Interested Persons

### UNITED STATES v. SAMUEL JESUS AVILA, No. 22-50088

The undersigned counsel of record certifies that the persons having an interest in the outcome of this case are those listed below:

1. **Samuel Jesus Avila,** Defendant-Appellant;

2. **Ashley C. Hoff,** U.S. Attorney;

3. **Monica L. Daniels,** Assistant U.S. Attorney, who represented Plaintiff-Appellee in the district court;

4. **Maureen Scott Franco,** Federal Public Defender;

5. **John J. Velasquez,** Assistant Federal Public Defender, who represented Defendant-Appellant in the district court; and

6. **Kristin L. Davidson,** Assistant Federal Public Defender, who represents Defendant-Appellant in this Court.

This certificate is made so that the judges of this Court may evaluate possible disqualification or recusal.

s/ Kristin L. Davidson
KRISTIN L. DAVIDSON
*Attorney for Defendant-Appellant*

i

## Statement Regarding Oral Argument

Samuel Avila requests oral argument. He argues that his 18 U.S.C. § 922(n) conviction violates the Second Amendment under *New York State Rifle and Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). In addition, he argues that the district court procedurally erred in calculating his Guidelines range based on the misapplication of U.S.S.G. §§2K2.1(b)(1), (b)(4), and (b)(6)(B). Oral argument would allow the parties to address the Court's questions regarding the law and the record in this case.

# Table of Contents

Certificate of Interested Persons.......................................... i

Statement Regarding Oral Argument............................... ii

Table of Authorities.......................................................... v

Subject Matter and Appellate Jurisdiction ..................... 1

Issues Presented for Review............................................ 2

Statement of the Case...................................................... 3

Summary of the Arguments ........................................... 7

Arguments and Authorities ........................................... 10

I.   Avila's conviction under 18 U.S.C. § 922(n) violates the Second Amendment and must be reversed............................ 10

    A.  Standard of review. ............................................. 10

    B.  *Bruen* established a new analytical framework for analyzing Second Amendment challenges. .........................11

    C.  Under *Bruen*, the Second Amendment's plain text covers conduct under § 922(n) and the statute is presumptively unconstitutional. ................................................. 15

    D.  The Government bears the burden to show that § 922(n)'s firearm restrictions are "consistent with the Nation's historical tradition of firearm regulation." It cannot do so........................................................ 19

II.  The district court procedurally erred in calculating Avila's Guidelines range. .................................................... 29

    A.  Standards of review. ......................................... 30

B.  Avila did not unlawfully possess three or more firearms under §2K2.1(b)(1), and the two-level enhancement was applied in error.................................................................... 30

C.  The district court clearly erred in finding that Avila possessed his firearm in connection with another felony offense under §2K2.1(b)(6)(B). ............................................ 32

D.  The district court plainly erred in applying the stolen firearm enhancement under §2K2.1(b)(4). ......................... 39

1.  The district court's two-level enhancement under §2K2.1(b)(4) for possessing stolen firearms was plain error. .................................................................. 40

2.  The obvious error affected Avila's substantial rights because it resulted in a higher, incorrect Guidelines range. .......................................................................... 41

3.  The Court should correct the error because it seriously affects the fairness, integrity, and public reputation of the judicial proceedings.......................... 42

Conclusion..................................................................................... 43

Certificate of Service..................................................................... 44

Certificate of Compliance with Type-Volume Limit...................... 45

iv

# Table of Authorities

## Cases

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ..............................................................*passim*

*Folajitar v. Att'y Gen. U.S. of Am.,*
  980 F.3d 897 (3d Cir. 2020).......................................... 26

*Griffith v. Kentucky,*
  479 U.S. 314 (1987) ...................................................... 29

*Henderson v. United States,*
  568 U.S. 266 (2013) ...................................................... 11

*Hollis v. Lynch,*
  827 F.3d 436 (5th Cir. 2016) ........................................ 12

*Illinois v. Gates,*
  462 U.S. 213 (1987) ...................................................... 37

*Kanter v. Barr,*
  919 F.3d 437 (7th Cir. 2019) .................................. 16, 26

*McDonald v. City of Chicago,*
  561 U.S. 742 (2010) ...................................................... 12

*Molina-Martinez v. United States,*
  578 U.S. 189 (2016) ...................................................... 41

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco,*
  *Firearms & Explosives [NRA],*
  700 F.3d 185 (5th Cir. 2012) ................................. 13, 25

*New York State Rifle and Pistol Association, Inc. v. Bruen,*
  142 S. Ct. 2111 (2022).........................................*passim*

*Potts v. State,*
  526 So. 2d 104 (Fla. Dist. Ct. App. 1987),
  *approved,* 526 So. 2d 63 (Fla. 1988) ..................... 24, 26

*Rosales-Mireles v. United States*,
   138 S. Ct. 1908 (2018) ........................................................ 30, 42

*United States v. Alfaro*,
   30 F.4th 514 (5th Cir. 2022) ................................................ 32, 39

*United States v. Arzberger*,
   592 F. Supp. 2d 590, 602 (S.D.N.Y. 2008) ................................. 28

*United States v. Bell*,
   720 F. App'x 217 (5th Cir. 2018) ................................................ 36

*United States v. Boykin*,
   794 F.3d 939 (8th Cir. 2015) ...................................................... 35

*United States v. Clinton*,
   825 F.3d 809 (7th Cir. 2016) ...................................................... 38

*United States v. Coleman*,
   609 F.3d 699 (5th Cir. 2010) ...................................................... 33

*United States v. Dabeit*,
   231 F.3d 979 (5th Cir. 2000),
   *overruled on other grounds by United States v. Reyna*,
   358 F.3d 344 (5th Cir. 2004) ...................................................... 37

*United States v. Escalante-Reyes*,
   689 F.3d 415 (5th Cir. 2012) (en banc) ..................................... 11

*United States v. Hagman*,
   740 F.3d 1044 (5th Cir. 2014) .................................................... 32

*United States v. Hernandez-Galvan*,
   632 F.3d 192 (5th Cir. 2011) ...................................................... 30

*United States v. Houston*,
   364 F.3d 243 (5th Cir. 2004) ...................................................... 31

*United States v. Hunter*,
   543 F. App'x 374 (5th Cir. 2013) (per curiam)...................... 36, 38

*United States v. Jackson*,
   818 F.2d 345 (5th Cir. 1987) ...................................................... 37

*United States v. Jefferies*,
   587 F.3d 690 (5th Cir. 2009) ................................................ 33, 38

*United States v. Jernigan*,
   745 F. App'x 238 (5th Cir. 2018) (per curiam) ........................... 36

*United States v. Kennedy*,
   593 F. Supp. 2d 1221 (W.D. Wash. 2008) ................................. 28

*United States v. Kerr*,
   876 F.2d 1440 (9th Cir. 1989) .................................................... 37

*United States v. Knowles*,
   29 F.3d 947 (5th Cir. 1994) ..............................................10, 11, 29

*United States v. Laurent*,
   861 F. Supp. 71 (E.D.N.Y. 2011) .......................................*passim*

*United States v. Love*,
   20-cr-20327, 2021 WL 5758940
   (E.D. Mich. Dec. 3, 2021) ..........................................16, 18, 19, 27

*United States v. Luna*,
   165 F.3d 316 (5th Cir. 1999) ...................................................... 10

*United States v. McGinnis*,
   956 F.3d 747 (5th Cir. 2020) ................................................ 12, 13

*United States v. Olano*,
   507 U.S. 725 (2009) ...........................................................11, 30

*United States v. Olson*,
   160 F. App'x 482 (7th Cir. 2005) (per curiam) ........................... 35

*United States v. Orozco*,
   786 F. App'x 17 (5th Cir. 2019) (per curiam) ...................... 33, 36

*United States v. Quiroz*,
   No. 4:22-cr-00104-DC, (W.D. Tex. June 9, 2022) ................. 16, 18

*United States v. Reese,*
  627 F.3d 792 (10th Cir. 2010) ..................................................... 14

*United States v. Salerno,*
  481 U.S 739 (1987) ....................................................................... 23

*United States v. Torres,*
  566 F. Supp. 2d 591 (W.D. Tex. 2008)........................................ 27

*United States v. Urbina-Fuentes,*
  900 F.3d 687 (5th Cir. 2018) ....................................................... 42

*United States v. Williams,*
  616 F.3d 685 (7th Cir. 2010) ....................................................... 26

*United States v. Zubia,*
  727 F. App'x 86  (5th Cir. 2018) (per curiam)............................ 38

## Constitutional Provisions

U.S. Const. amend. II ...............................................................*passim*

U.S. Const. amend. V................................................................ 22, 28

U.S. Const. amend. XIV ................................................................. 20

## Statutes

18 U.S.C. § 922................................................................ 14, 17, 26

18 U.S.C. § 922(g)(8) ..................................................................... 14

18 U.S.C. § 922(n) .................................................................*passim*

18 U.S.C. § 3142........................................................................... 23

18 U.S.C. § 3231 ............................................................................. 1

18 U.S.C. § 3742(a) ........................................................................ 1

21 U.S.C. § 844............................................................................. 39

28 U.S.C. § 1291 ................................................................. 1

Act of Oct. 3, 1961,
    Pub. L. No. 87–342, 75 Stat. 757 (repealed) .............. 23

Federal Firearms Act of 1938,
    75 Cong. Ch. 850, § 2(e), 52 Stat. 1250, 1251 (repealed) .......... 23

Gun Control Act of 1968,
    1968 U.S.C.C.A.N. 2112, 2169 .................................. 17

Gun Control Act of 1968,
    Pub. L. 90–618, 82 Stat. 1213
    (codified at 18 U.S.C. §§ 921–928) ............................ 23

Haw. Rev. Stat. Ann. § 134-7 ...................................... 24

Ohio Rev. Code Ann. § 2923.13(A)(2) ........................... 24

Ohio Rev. Code Ann. § 2923.13(A)(3) ........................... 24

Tex. Health & Safety Code § 481.121(b)(1) .................... 39

Tex. Penal Code § 12.22 ............................................. 39

Wash. Rev. Code § 9.41.040(2)(a)(iv) ........................... 24

**Rules**

Fed. R. App. P. 4(b)(1)(A)(i) ....................................... 1

Fed. R. App. P. 32(a)(5) ............................................ 45

Fed. R. App. P. 32(a)(6) ............................................ 45

Fed. R. App. P. 32(a)(7)(B) ........................................ 45

Fed. R. App. P. 32(f) ................................................ 45

Fed. R. Crim. P. 52(b) .............................................. 10

**United States Sentencing Guidelines**

U.S.S.G. §2K2.1(b)(1)....................................................*passim*

U.S.S.G. §2K2.1(b)(1)(A)...........................................*passim*

U.S.S.G. §2K2.1(b)(4)....................................................*passim*

U.S.S.G. §2K2.1(b)(6)............................................. 33, 38, 39

U.S.S.G. §2K2.1(b)(6)(B)...........................................*passim*

U.S.S.G. §2K2.1, comment. (n.5) ............................... 8, 31

U.S.S.G. §2K2.1, comment. (n.14(A)) .......................... 33

U.S.S.G. §2K2.1, comment. (n.14(B)) .......................... 33

U.S.S.G. §2K2.1, comment. (n.14(C)) ...................... 33, 39

U.S.S.G. §5G1.1(a) ......................................................... 5

U.S.S.G. Ch.5, Pt.A (Sentencing Table)........................ 41

**Other Authority**

Saul Cornell, *Commonplace or Anachronism: The Standard
    Model, the Second Amendment, and the Problem of History
    in Contemporary Constitutional Theory,*
    16 Const. Comment. 221 (1999) ................................. 26

## Subject Matter and Appellate Jurisdiction

**1.  Subject Matter Jurisdiction in the District Court.** This case arose from the prosecution of an alleged offense against the laws of the United States. The district court had jurisdiction of this case under 18 U.S.C. § 3231.

**2.  Jurisdiction in the Court of Appeals.** This is a direct appeal from a final decision of the United States District Court for the Western District of Texas and imposing a sentence under the Sentencing Reform Act of 1984. This Court has jurisdiction of the appeal under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

A criminal defendant who wishes to appeal a district court judgment must file a notice of appeal in the district court within 14 days after the judgment's entry. Fed. R. App. P. 4(b)(1)(A)(i). In this case, the court entered its judgment on February 8, 2022. ROA.4. Avila filed a notice of appeal on the same day. ROA.4, 46.

## Issues Presented for Review

1. Whether 18 U.S.C. § 922(n) violates the Second Amendment under *New York State Rifle and Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

2. Whether the district court procedurally erred in calculating the Guidelines range by applying enhancements under U.S.S.G. §§2K2.1(b)(1)(A), (b)(4), and (b)(6)(B).

## Statement of the Case

1. Samuel Avila was convicted of receiving a firearm while under indictment, in violation of 18 U.S.C. § 922(n), and sentenced to five years' imprisonment. On appeal, Avila argues that, under *New York State Rifle and Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), his conviction violates the Second Amendment. The Court should vacate his conviction. Alternatively, he argues that the district court procedurally erred in calculating his Guidelines range. This Court should reverse and remand for resentencing without the erroneously applied enhancements.

2. In August 2021, Odessa Police Department officers received a tip that Avila possessed a firearm and drugs. ROA.99. Late at night on August 22, 2021, officers saw Avila inside a night club, smoking marijuana with his friends. ROA.99. Officers waited for the group to leave and then followed the car to a nearby apartment complex. ROA.99. John Sanchez was driving the car, which was registered to one of Avila's family members, and Avila was sitting in the front passenger seat. ROA.99, 104. Zephaniah Blaylock and Marcus Cameron were sitting in the back seat. ROA.104.

After the officers saw Avila and his friends get out of the car and walk away, the officers secured the car. ROA.99. They could see a

handgun on the front passenger seat, a bottle of alcohol with a broken seal, and a second firearm in the back seat. ROA.99. The rear window was rolled down and the officers smelled marijuana. ROA.99. Officers detained the group and obtained a search warrant for the car. ROA.104.

The search uncovered 1.05 ounces of marijuana and a digital scale in the car's glove box, as well as a Glock ZEV Custom 9mm handgun on the front passenger seat where Avila had traveled and a 31-round magazine for the Glock in the front-passenger footwell. ROA.99, 104. In the backseat of the car, where Blaylock and Cameron had been riding, the officers found a stolen handgun on the back left passenger side, a stolen handgun in the back right passenger door, and a stolen AR-15 in a green duffle back in the back center seat. ROA.104. Avila claimed possession of the Glock, marijuana, and digital scale. ROA.104.

A records check revealed that Avila had been indicted for burglary of habitation in Ector County, Texas, on September 14, 2020, had pleaded guilty on July 26, 2021, and received a deferred adjudication and eight years' probation. ROA.99–100, 107.

3. Avila was charged with and pleaded guilty to receipt of the Glock while under indictment, in violation of 18 U.S.C. § 922(n). ROA.24, 54–70; *see also* ROA.99.

4. A probation officer prepared a presentence report that assigned a total offense level of 25. ROA.105. Included in the calculation was a two-level enhancement under §2K2.1(b)(1) because the offense involved three to seven firearms: the Glock claimed by Avila, as well as the two handguns and an AR-15 found in the backseat of the car. ROA.105. Two levels were added under §2K2.1(b)(4) because the firearms found in the backseat were stolen. ROA.105. Four levels were added under §2K2.1(b)(6)(B), because the firearm was possessed in connection with another felony offense—the 1.05 ounces of marijuana and digital scale found in the glove box. ROA.105. Combined with a criminal history category of III, offense level 25 yielded a Guidelines range of 70 to 87 months. ROA.107, 111. Because of the five-year statutory maximum, Avila's Guidelines became 60 months. ROA.111; U.S.S.G. §5G1.1(a).

Avila objected to the two-level increase under §2K2.1(b)(1)(A) because he was responsible for only the Glock found in his front-passenger seat, not the other three firearms that were found where Blaylock and Cameron were riding. ROA.117–19. He also objected

5

to the four-level enhancement under §2K2.1(b)(6)(B), because there was no evidence that the Glock was possessed in connection with a felony drug trafficking offense. ROA.119–20.

5. At sentencing, the district court overruled both objections and adopted the presentence report without change. ROA.77–79. The court sentenced Avila to 60 months' imprisonment, followed by three years' supervised release. ROA.88–89.

Avila appealed. ROA.46.

## Summary of the Arguments

### I.    Avila's conviction under 18 U.S.C. § 922(n) violates the Second Amendment and must be reversed.

Under the new analytical framework established by *New York State Rifle and Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), 18 U.S.C. § 922(n) violates the Second Amendment. The Government bears the burden to show § 922(n) is consistent with the nation's historical tradition of firearm regulation, which it cannot do. This Court should reverse Avila's conviction.

### II.    The district court procedurally erred in calculating Avila's Guidelines range.

The district court erroneously applied three separate guideline enhancements based on (1) the offense involving three or more firearms, under §2K2.1(b)(1)(A); (2) possession of a firearm in connection with another felony offense, under §2K2.1(b)(6)(B); and (3) stolen firearms, under §2K2.1(b)(4). The first two issues are preserved; the third is reviewed under the plain error standard.

The district court erroneously applied a two-level enhancement under §2K2.1(b)(1)(A) because it found that the offense involved three or more firearms, including the guns found in the backseat of the car. But the guideline commentary makes clear that the court is to count "only those firearms that were unlawfully sought to be

obtained, unlawfully possessed, or unlawfully distributed." U.S.S.G. §2K2.1, comment. (n.5). Here, the offense was for unlawful receipt of the Glock. Avila was restricted from *receiving* a firearm while under indictment, not *possessing* guns. Therefore, he only unlawfully received one gun. The erroneous application of §2K2.1(b)(1)(A) was not harmless.

The district court erroneously applied a four-level enhancement under §2K2.1(b)(6)(B) because it found that Avila possessed the firearm in connection with a drug trafficking offense. It was clear error to conclude that Avila's possession of one ounce of marijuana and a scale were evidence of a drug trafficking or any other *felonious* offense. The error was not harmless.

The district court plainly erred when it applied the two-level enhancement under §2K2.1(b)(4). That is because the offense—unlawful receipt of the Glock—did not involve a stolen firearm. Because no facts established that the Glock was stolen, the application of §2K2.1(b)(4) was an obvious error. The additional two levels affected his substantial rights, and the error is so serious that it warrants correction.

This Court should vacate Avila's sentence and remand for resentencing without application of the erroneously applied enhancements.

## Arguments and Authorities

I.  **Avila's conviction under 18 U.S.C. § 922(n) violates the Second Amendment and must be reversed.**

Avila pleaded guilty to receipt of a firearm while under indictment pursuant to 18 U.S.C. § 922(n). Since his conviction, however, the Supreme Court established a new analytical framework for challenging restrictions on Second Amendment rights. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Under *Bruen*, the plain text of the Second Amendment covers conduct under § 922(n). That is all Avila must show. The burden becomes the Government's to prove that § 922(n) is consistent with the Nation's historical tradition of firearm regulation. This it cannot do. This Court should reverse Avila's conviction.

### A. Standard of review.

This Court reviews the constitutionality of a statute de novo. *United States v. Luna*, 165 F.3d 316, 319 (5th Cir. 1999). Because Avila did not object below to the constitutionality of § 922(n), his conviction is reviewed for plain error. *See United States v. Knowles*, 29 F.3d 947, 950–51 (5th Cir. 1994) (applying plain error standard to challenge to constitutionality of statute); *see* Fed. R. Crim. P. 52(b). Under this standard, there must be (1) an error, (2) that is

plain, and (3) affects the defendant's substantial rights. *United States v. Olano*, 507 U.S. 725, 732–34 (2009). If the first three prongs are satisfied, then this Court may remedy the error if the error seriously affects the fairness, integrity, and public reputation of the judicial proceedings. *Id*. at 736.

*Bruen* was decided after Avila's sentencing, but during the pendency of direct appeal. When the law becomes "settled or clarified by the time of … the appellate decision," the plainness of the error is judged by the law at the time of appeal. *United States v. Escalante-Reyes*, 689 F.3d 415, 418 & n.1 (5th Cir. 2012) (en banc); *see also Henderson v. United States*, 568 U.S. 266, 279 (2013). A conviction imposed under an unconstitutional statute meets the plain error standard. *Cf. Knowles*, 29 F.3d at 951–52.

## B. *Bruen* established a new analytical framework for analyzing Second Amendment challenges.

Section 922(n) prohibits a person under indictment from receiving a firearm. 18 U.S.C. § 922(n). This statutory section violates the Second Amendment, and Avila's conviction must be reversed.

The Second Amendment to the United States Constitution mandates that, a "well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall

not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment codified an individual right to possess and carry weapons, and explained that the inherent right of self-defense, particularly in the home, is central to the right. 554 U.S. 570, 628 (2008); *see also McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (holding "that individual self-defense is the central component of the Second Amendment right"). The right, however, is not unlimited, and the Supreme Court acknowledged the legitimacy of "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 544 U.S. at 626–27.

Following *Heller*, the Fifth Circuit "adopted a two-step inquiry for analyzing laws that might impact the Second Amendment." *Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016). First, courts would ask "whether the conduct at issue falls within the scope of the Second Amendment right." *United States v. McGinnis*, 956 F.3d 747, 754 (5th Cir. 2020) (quoting *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives [NRA]*, 700 F.3d 185,

194 (5th Cir. 2012)). "To make that determination, [courts] look[ed] to whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." *McGinnis*, 956 F.3d at 754. If the conduct was outside the scope of the Second Amendment, then the law was constitutional. *Id*. If not, courts proceeded to the second step, to determine whether to apply strict or intermediate scrutiny. *Id*. Under this Court's framework, "a regulation that threatens a right at the core of the Second Amendment—i.e., the right to possess a firearm for self-defense in the home—triggers strict scrutiny, while a regulation that does not encroach on the core of the Second Amendment is evaluated under intermediate scrutiny." *Id*.

*Bruen* extended the right articulated in *Heller*: the Second Amendment protects the individual right to possess and carry a firearm in public, as well as in the home. 142 S. Ct. at 2122. In reaching this holding, the Supreme Court announced a new framework for analyzing Second Amendment claims, which abrogates the

two-step inquiry adopted by this Court.[1] *Id*. at 2126–27. While the Supreme Court rejected the second step of that framework, it reasoned that "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Id*. at 2127. Under *Bruen*'s new framework "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 2126. This is all that a defendant must show. It then becomes the Government's burden to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside of the Second Amendment's 'unqualified command.'" *Id*. (cleaned up).

---

[1] The new framework abrogated countless circuit court opinions that applied the old two-part framework. *See Bruen*, 142 S. Ct. at 2127–28. Those now-abrogated opinions included cases that upheld § 922 offenses against Second Amendment challenges. *See id*. at 2127 n.4 (citing *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010) (applying two-part framework to find § 922(g)(8) did not violate the Second Amendment as applied)).

### C. Under *Bruen*, the Second Amendment's plain text covers conduct under § 922(n) and the statute is presumptively unconstitutional.

Under *Bruen*'s new framework, courts must first determine whether the Second Amendment's plain text covers an individual's conduct. 142 S. Ct. at 2129–30. If so, the Constitution presumptively protects the conduct. *Id.*

The plain text of the Second Amendment covers conduct under § 922(n). The statute bars all firearm transfer or receipt by an individual merely under indictment for any offense punishable by over a year in prison. § 922(n). The statute is not limited by the type of firearm or the purpose for which the firearm might be used. Nor is it limited by the place of receipt, applying equally to a person's receipt of a firearm in their home or public space. Because of the broad prohibition on receipt of all firearms in the home and in public, the conduct prohibited under § 922(n) involves "weapons 'in common use' today for self-defense." *Bruen*, 142 S. Ct. at 2134 (citing *Heller*,

554 U.S. at 627). Under the statute, law-abiding citizens[2] can be denied their Second Amendment rights and even imprisoned, simply because they are accused—but not convicted—of a crime.

---

[2] A person's status as "law-abiding" is not relevant to answering the first step in the *Bruen* analysis—whether the Second Amendment covers the conduct at issue. To the extent a person's status is relevant, it should be considered in the context of historical tradition, a burden the Government must bear. *See Kanter v. Barr*, 919 F.3d 437, 451–52 (7th Cir. 2019) (Barrett, J., dissenting), *abrogated by Bruen*, 142 S. Ct. 2111. Then-Judge Barrett reasoned that, under the language of *Heller* itself, the word "people" refers to "all Americans," meaning that even felons, who can be lawfully restricted, are not "categorically excluded from our national community." *Id.* at 453. The "question is whether the government has the power to disable the exercise of a right that they otherwise possess, rather than whether they possess the right at all." *Id. Bruen* did not require a finding that a person be "law-abiding" for the plain text of the Second Amendment to apply to them, choosing instead to hone its focus on whether the conduct was protected because the firearms in question are "'in common use' today for self-defense," and that the right to self-defense extends outside of the home." 142 S. Ct. at 2134–35.

The Government is unlikely to meet this burden because courts have routinely explained that individuals under indictment are "law-abiding" citizens. *See, e.g., United States v. Laurent*, 861 F. Supp. 71, 102 (E.D.N.Y. 2011) ("a defendant under indictment is a 'law-abiding citizen' who remains eligible for Second Amendment protection."); *United States v. Love*, 20-cr-20327, 2021 WL 5758940, at *3 (E.D. Mich. Dec. 3, 2021) ("The purchase of a firearm by a presumably innocent individual falls within the Second Amendment right as historically understood."). The district judge who presided over Avila's case made the same finding in a separate case. *See United States v. Quiroz*, No. 4:22-cr-00104-DC, Doc. No. 39 at 8 (W.D. Tex. June 9, 2022) (finding that an indicted individual "remains a law-abiding citizen.").

The underlying indictment need not be for a violent offense and need not be accompanied by any determination of dangerousness or other meaningful process. Thus, § 922(n) clearly encroaches on the right to possess and carry a firearm in the home and public[3] and upends the longstanding presumption of innocence,[4] all of which is

––––––––––––––––––––

[3] The legislative history of the Gun Control Act of 1968 further illustrates that the passage of § 922(n) was rooted in a flawed analysis of the Second Amendment, and clearly implicates those rights post-*Heller*. In passing § 922, Congress assuaged its Second Amendment concerns by assuming that the Second Amendment did not confer an individual right to bear arms. The Senate Report explained:

> A number of witnesses at the hearings have raised the question of the constitutionality of Federal firearms legislation, because it would interfere with individual rights guaranteed by the second amendment of the Constitution … [court] decisions hold that the second amendment, unlike the first, *was not adopted with the individual rights in mind*, but is a prohibition upon Federal action which would interfere with the organization of militia by the states of the Union….

1968 U.S.C.C.A.N. 2112, 2169 (emphasis added). This position was rejected by the Supreme Court in *Heller* and *Bruen*.

[4] Worse still, the restriction on receipt while under indictment can linger for years. In this case, for example, the prohibition on firearm receipt could apply to Avila until 2029. Avila was indicted for burglary in state court on September 14, 2020, and had pleaded guilty on July 16,

inconsistent with the historical traditions of the Second Amendment and the Constitution more broadly.

While *Bruen* announced a new analytical framework, it largely upheld the first part of the pre-existing framework employed by the Fifth Circuit and other courts around the country. 142 S. Ct. at 2127 ("Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history."). Courts that addressed the constitutionality of § 922(n) after *Heller* but before *Bruen*, consistently found that conduct at issue under § 922(n) *is protected* by the Second Amendment. *United States v. Laurent*, 861 F. Supp. 2d 71, 102 (E.D.N.Y. 2011); *United States v. Love*, No. 20-cr-20327, 2021 WL 5758940, at *3 (E.D. Mich. Dec. 3, 2021); *United States v. Quiroz*, No. 4:22-cr-00104-DC, Doc. No. 39 at 8 (W.D. Tex. June 9, 2022).

---

2021. ROA.100. He received a deferred adjudication and was sentenced to eight years of probation. ROA.100, 107. That deferred adjudication does not qualify as a conviction, but this Court has explained that he would have been considered "under indictment" for the purposes of § 922(n) throughout the term of his probation. *See United States v. Valentine*, 401 F.3d 609, 611 (5th Cir. 2005) ("We conclude that a Texas state defendant who is on probation pursuant to a deferred adjudication of a felony charge remains, as a matter of law, under indictment.").

Yet, they upheld the statute based on the now-rejected means-end test. *See, e.g., Laurent*, <u>861 F. Supp. 2d at 102</u>; *Love*, <u>2021 WL 5758940</u>, at *3 ("Based on *Heller* and its progeny, the Court finds that § 922(n) does impose a substantial burden on Mr. Love's Second Amendment's right.").

Because the plain text of the Second Amendment covers the conduct regulated under § 922(n), the law is presumptively unconstitutional. *See Bruen*, <u>142 S. Ct. at 2129</u>–30.

### D. The Government bears the burden to show that § 922(n)'s firearm restrictions are "consistent with the Nation's historical tradition of firearm regulation." It cannot do so.

*Bruen* makes clear that, when the plain text of the Second Amendment covers the conduct at issue, the burden shifts to the Government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, <u>142 S. Ct. at 2130</u>. The Government cannot sustain its burden.

To meet its burden, the Government must provide historical examples and support for the constitutionality of § 922(n), and the Court is "entitled to decide a case based on the historical record compiled by the parties," rather than conducting its own historical

surveys. *See id.* at 2130 n.6.[5] The Government cannot rely on a select few "outlier" regulations; it must show "a tradition of broadly prohibiting" conduct in the manner of § 922(n). *See id.* at 2138, 2156. There is no such historical tradition of depriving an individual of their Second Amendment right, based solely on an indictment.

The Supreme Court has explained that "when it comes to interpreting the Constitution, not all history is created equal. Thus, constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Id.* at 2136 (quoting *Heller*, 554 U.S. at 634–35). "The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates either date may not illuminate the scope of the right if linguistic or legal conventions change in the intervening years." *Id.*[6]

---

[5] *See also Bruen*, 142 S. Ct. at 2150 ("Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

[6] The Fourteenth Amendment was specifically implicated in *Bruen* because it is the Fourteenth Amendment that imposes the Second Amendment's pronouncement on a state regulation or law. The Supreme

Similarly, the Supreme Court explained that "we must also guard against giving postenactment history more weight than it can rightly bear." *Id.* The Court expressed skepticism about reliance on laws passed long after the passage of the particular constitutional amendment and explained "to the extent later history contradicts what the text says, the text controls." *Id.* at 2137.

The Court also explained that the requisite similarity between the challenged law and historical examples in part depends on whether the problem addressed by the law is longstanding or uniquely modern. *Id.* at 2131–33. When "a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at

---

Court left open the question of whether the proper time-period to consider, particularly for a federal statute, is 1791, the passage of the Second Amendment, or 1868, the passage of the Fourteenth Amendment. *See Bruen*, 142 S. Ct. at 2137–38; *id*. at 2163 (Barret, J., concurring). But the Court acknowledged that 19th century evidence was secondary to that from the nation's founding, *see id*. at 2137, and its value is likely even more limited when addressing a federal statute. The Government cannot meet its burden under either timeframe.

2131. The total handgun ban in *Heller* and public-carry restriction in *Bruen* involved this type of straightforward historical inquiry. *Id*. But, "cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id*. at 2132. "When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy …." *Id*. Whether an historical regulation is a proper analogue for a uniquely modern regulation turns on whether they are "relevantly similar," based in part on how and why the regulations burden the Second Amendment right. *Id*. at 2132–33.

Here, as in *Heller* and *Bruen*, historical examples of regulations proffered by the Government must be "distinctly similar" to § 922(n) because the restriction does not address "unprecedented societal concerns or dramatic technological changes[.]" *Id*. at 2132–33. Section 922(n) creates a total ban on firearm receipt, based on an indictment, a process older than and expressly discussed in the Fifth Amendment of the Constitution. *See* U.S. Const. amend. V.

The Government cannot meet its burden to show that the Nation's history, particularly in the late 18th century, supports firearm restrictions for individuals under indictment or "distinctly similar"

restrictions. "Indictment has historically had a limited effect on an individual's constitutional rights." *Laurent*, <u>861 F. Supp. 2d at 91</u>. And, the impact on an indicted person's rights has generally been limited to detention or certain pre-trial conditions only after a judicial determination that such conditions are necessary. *Id*. at 90–93 (citing *United States v. Salerno*, <u>481 U.S 739, 764</u> (1987); <u>18 U.S.C. § 3142</u>).

Conversely, the history of barring indicted individuals from receiving firearms is limited and relatively recent. Congress first passed a law prohibiting transporting firearms for individuals under indictment for a crime of violence, in 1938. *See* Federal Firearms Act of 1938, 75 Cong. Ch. 850, § 2(e), <u>52 Stat. 1250</u>, <u>1251</u> (repealed). It was not until 1961 that Congress expanded the prohibition to include all individuals under indictment. *See* Act of Oct. 3, 1961, Pub. L. No. 87–342, 75 Stat. 757 (repealed). The statute was again clarified in 1968, to include indictments in state and federal court, but only for those felonies punishable by more than one year in prison. *See* Gun Control Act of 1968, Pub. L. 90–618, <u>82 Stat. 1213</u> (codified at <u>18 U.S.C. §§ 921–928</u>).

The Government cannot rely on the passage of § 922(n) in the mid-20th century to establish a long-standing historical tradition

back to the enactment of the Second Amendment, particularly where it contradicts the plain language of the Constitution's text. *See Bruen*, 142 S. Ct. at 2136–37. The Supreme Court specifically declined to consider any 20th century evidence offered by the respondents in *Bruen*, noting it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id*. at 2154 n.28. State laws aimed at firearm receipt or possession by persons under indictment were enacted largely in the 20th century and tend to be less restrictive than § 922(n).[7] The lack of "distinctly similar historical regulation" restricting firearm receipt for individuals under indictment, particularly prior to the 20th century, demonstrates that § 922(n) is inconsistent with the Second Amendment. *See Bruen*, 142 S. Ct. at 2131.

---

[7] *See, e.g.*, Ohio Rev. Code Ann. § 2923.13(A)(2), (3) (passed in 1972 and limited to those under indictment for "offense of violence" or certain other enumerated offenses); Wash. Rev. Code § 9.41.040(2)(a)(iv) (added in 1996 and requiring those on bond pending trial for serious offenses to surrender firearms); Haw. Rev. Stat. Ann. § 134-7 (passed in 1988). *See also Potts v. State*, 526 So. 2d 104, 104 (Fla. Dist. Ct. App. 1987), *approved*, 526 So. 2d 63 (Fla. 1988) (finding statute restricting use and concealed carry of firearms by those under indictment violated state constitution).

Even if § 922(n) were a uniquely modern regulation, such that the Court could expand its historical analysis to include merely similar historical analogues, there is limited support for restricting firearms for individuals under indictment. The *Heller* Court acknowledged that presumptively lawful regulatory measures include "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626–27. Even if the Court were to assume sufficient historical evidence for those restrictions, the Government could prove § 922(n)'s consistency with historical tradition only if those types of restrictions were found to be "relevantly similar," by looking to how and why the regulations burden the Second Amendment right. *See Bruen*, 142 S. Ct. at 2132–33.

But the Government cannot rely on general public safety justifications to uphold § 922(n). The examples provided by *Heller* generally all comport with the historical principle of disarming select groups for the sake of public safety. *See NRA*, 700 F.3d at 200–01 (citing Saul Cornell, *Commonplace or Anachronism: The Standard*

25

*Model, the Second Amendment, and the Problem of History in Contemporary Constitutional Theory*, 16 Const. Comment. 221, 231–36 (1999)); *see also Kanter*, <u>919 F.3d at 453</u>–64 (Barrett, J., dissenting) (explaining that history does not support restricting firearms for felons categorically, but rather for categories of people deemed dangerous). The same inherent threat to public safety is not present in a § 922(n) case,[8] particularly because the statute is not limited to individuals under indictment for violent or firearms offenses[9] and

---

[8] *See Potts*, <u>526 So. 2d at 104</u> (striking down Florida statute restricting firearm rights for individuals under indictment, and noting, "[i]f an individual is presumed innocent until proven guilty, … how can it validly be assumed that individuals 'under indictment' necessarily present a greater risk to society than other citizens?").

[9] Courts have upheld portions of § 922 that restrict gun ownership for individuals convicted of non-violent crimes. *See, e.g.*, *Folajitar v. Att'y Gen. U.S. of Am.*, <u>980 F.3d 897</u> (3d Cir. 2020). Those cases applied the now-defunct two-part framework, and several circuits left open the possibility of as-applied or overbreadth challenges for certain non-violent convictions. *See, e.g.*, *United States v. Williams*, <u>616 F.3d 685, 693</u> (7th Cir. 2010). Any historical basis for restricting the Second Amendment rights of individuals convicted of even non-violent crimes has limited application for people who have been simply indicted.

does not require an individualized determination as to dangerousness.[10] The Supreme Court has since explained that the "government may not simply posit that the regulation promotes an important interest." *Bruen*, 142 S. Ct. at 2126.

As discussed above, the courts that have considered the constitutionality of § 922(n), have consistently found that the right was protected and not subject to historical restriction under the first step of the pre-*Bruen* framework. *See, e.g.*, *Laurent*, 861 F. Supp. 2d at 90–93, 102–03; *Love*, 2021 WL 5758940, at *3. Moreover, several district courts have struck down per se restrictions on the rights of indicted individuals. *See, e.g.*, *United States v. Torres*, 566 F. Supp. 2d 591 (W.D. Tex. 2008) (Cardone, J.) (finding the Adam Walsh

---

[10] For similar reasons, this Court should not look to historical surety statutes as analogues. The *Bruen* Court addressed a series of mid-19th century statutes requiring certain dangerous individuals to post bond before carrying weapons in public. 142 S. Ct. at 2148. Such statutes are easily distinguishable because they only limit public carry, provide for the carrier to post bond to carry firearms, and are limited to those individuals found to pose a *specific* threat. *See id.* at 2148–50. The Court in *Bruen* further explained that such statutes were of limited historical value because of the dearth of evidence that authorities ever enforced them. *Id.* at 2149.

27

Amendments, which mandated release conditions including on fire-arm possession for those charged with sex offenses, violated the Due Process Clause of the Fifth Amendment); *United States v. Arzberger*, 592 F. Supp. 2d 590, 602 (S.D.N.Y. 2008); *cf. United States v. Kennedy*, 593 F. Supp. 2d 1221, 1231 n.4 (W.D. Wash. 2008) (noting concern with government's position that defendants could be prohibited from possessing firearms simply because they were charged with an offense). *Arzberger*, for example, addressed the provision of the Adam Walsh Amendments forbidding possession of firearms for individuals charged under certain statutes. 592 F. Supp. 2d at 601–03. It explained "although the Supreme Court has indicated that this privilege may be withdrawn from some groups of persons such as convicted felons, there is no basis for categorically depriving persons who are merely accused of certain crimes of the right to legal possession of a firearm." *Id*. at 602.

The Government cannot meet its burden of showing that § 922(n) is consistent with the Nation's historical tradition of firearm regulation.

* * *

*Bruen*'s new analytical framework plainly applies to § 922(n), and renders the statute violative of the Second Amendment. Avila's

conviction under a clearly unconstitutional statute is an obvious error that affects his substantial rights and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Knowles*, 29 F.3d at 951; *see also Griffith v. Kentucky*, 479 U.S. 314, 322–23 (1987) (noting that "the nature of judicial review requires that we adjudicate specific cases, and each case usually becomes the vehicle for announcement of a new rule. But after we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review."). The Court should reverse Avila's conviction.

## II. The district court procedurally erred in calculating Avila's Guidelines range.

The district court erroneously applied three separate enhancements to Avila's Guidelines range, each of which contributed to an excessive Guidelines range. While each error affected Avila's Guidelines range, their collective omission would have subjected him to a Guidelines range of 30 to 37 months, not the 60-month Guidelines range considered by the court. This Court should reverse his conviction and remand for resentencing without application of the enhancements.

### A. Standards of review.

The Court reviews the application of the Sentencing Guidelines de novo and the factual findings for clear error. *United States v. Hernandez-Galvan*, 632 F.3d 192, 196 (5th Cir. 2011). Avila preserved his objections to the enhancements under U.S.S.G §2K2.1(b)(1) and (b)(6)(B), set forth in Sections B and C, below.

Because Avila did not object to the erroneous application of §2K2.1(b)(4), set forth in Section D, this Court reviews this challenge for plain error. *Olano*, 507 U.S. at 732. Under plain-error review, Avila must show: (1) an error, (2) that is plain, (3) and that affected his substantial rights. *Id*. After this showing, this Court may exercise its discretion when the error is serious enough to affect the fairness, integrity, and public reputation of the judicial proceedings. *Rosales-Mireles v. United States*, 138 S. Ct. 1908, 1910 (2018). Miscalculating a Guidelines range ordinarily meets this standard and calls for the Court to exercise its discretion. *Id*.

### B. Avila did not unlawfully possess three or more firearms under §2K2.1(b)(1), and the two-level enhancement was applied in error.

Avila did not unlawfully possess three additional firearms discovered in the backseat of the car, where Blaylock and Cameron

were riding. Therefore, the district court erred in applying the two-level enhancement under §2K2.1(b)(1)(A).

Section 2K2.1(b)(1)(A) assigns a two-level enhancement "if the offense involved three or more firearms[.]" U.S.S.G. §2K2.1(b)(1)(A). The commentary further clarifies that:

> [f]or purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licenses dealer.

U.S.S.G. §2K2.1, comment. (n.5); *see also United States v. Houston*, 364 F.3d 243, 248 (5th Cir. 2004) ("For purposes of calculating the number of firearms 'involved' in a given offense, courts are to consider only those firearms unlawfully possessed.").

The record establishes that Avila received only the Glock found on his side of the car. ROA.99. Section 922(n) does not prohibit his possession of firearms, only their shipment, transport, or receipt. There are no facts in the record to suggest that Avila unlawfully received the three firearms found in the backseat of the car where two other individuals had been riding. Counsel has identified no published opinions where a person convicted under § 922(n) received this enhancement for *possessed* firearms.

*United States v. Hagman* is instructive. 740 F.3d 1044, 1051 (5th Cir. 2014). In *Hagman*, the Court explained that it was improper to enhance a felon-in-possession sentence under §2K2.1(b)(1) because it was not unlawful for a felon to attempt to possess or obtain a firearm. *Id.* The same reasoning applies here. The district court was not permitted to enhance Avila's sentence for receipt of a firearm while under indictment based on firearms he allegedly possessed, because it was not unlawful for him to possess firearms while under indictment. *See* § 922(n).

The error of adding two additional levels under §2K2.1(b)(1)(A) was not harmless. Without this enhancement, Avila's Guidelines range would have been 57 to 71 months. The Government cannot meet its heavy burden to establish that the sentence imposed "was not influenced in any way by the erroneous Guidelines calculation." *United States v. Alfaro*, 30 F.4th 514, 520–21 (5th Cir. 2022).

### C. The district court clearly erred in finding that Avila possessed his firearm in connection with another felony offense under §2K2.1(b)(6)(B).

The district court's finding that Avila possessed a firearm in connection with a drug trafficking or other *felonious* offense was clearly erroneous. *See United States v. Coleman*, 609 F.3d 699, 708 (5th Cir.

2010) (noting that the determination of the relationship between a firearm and another offense is a factual finding). The application of the four-level enhancement under §2K2.1(b)(6)(B) was erroneous.

Guideline §2K2.1(b)(6)(B) requires a four-level enhancement if the defendant "used or possessed any firearm … in connection with another felony offense." The phrase "another felony offense" means "any federal, state, or local offense, …, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." §2K2.1, comment. (n.14(C)). Generally, this enhancement applies if the firearm actually or potentially facilitated another felony. U.S.S.G. §2K2.1, comment. (n.14(A)). Where the other felony is drug-trafficking, however, the enhancement automatically applies if the firearm was found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia. U.S.S.G. §2K2.1, comment. (n.14(B)); *see also United States v. Jefferies*, 587 F.3d 690, 692–93 (5th Cir. 2009); *United States v. Orozco*, 786 F. App'x 17, 18 (5th Cir. 2019) (per curiam).

The district court adopted the presentence report and reasoning of the probation officer to find that §2K2.1(b)(6) applied because

Avila's possession of 1.05 ounces[11] of marijuana and a digital scale showed he was engaged in drug trafficking. ROA.105. In response to Avila's objection, the probation officer further alleged that "the Odessa Police Department received information indicating Avila was distributing narcotics," and further reasoned that Avila was smoking marijuana. ROA.115. At sentencing, the court stated: "That doesn't mean that you could prove beyond a reasonable doubt, but by a preponderance of the evidence, that taken with everything else, where he's in this vehicle. He flees, showing a guilty mind anyway." ROA.78. But the court did not clarify whether the "guilty mind" was limited to Avila's possession of marijuana, rather than the firearm or some other reason.

The district court's finding that Avila was engaged in drug trafficking, based on the possession of marijuana and a digital scale, was clear error. The amount of marijuana—one ounce—found in Avila's possession is consistent with personal use, not trafficking.

---

[11] Paragraph 20 of the presentence report states that Avila possessed "1.05 grams" of marijuana. ROA.105. This appears to be a clerical error. The factual basis for Avila's plea, as well as the factual recitation in the presentence report state that the quantity was measured in ounces. ROA.99, 103, 105.

*See, e.g.*, *United States v. Boykin*, <u>794 F.3d 939, 949</u> n.5 (8th Cir. 2015) (collecting cases supporting view that one ounce of marijuana could be considered a personal-use amount); *United States v. Olson*, <u>160 F. App'x 482, 484</u> (7th Cir. 2005) (per curiam) (finding two ounces of marijuana was consistent with personal use). Indeed, Avila was charged with only possession in state court, not trafficking. <u>ROA.108</u>. The court's finding that Avila and associates were observed smoking marijuana further weakens the case for trafficking. <u>ROA.115</u>. It shows that Avila was using it, and he possessed a user's amount.

Avila's possession of a digital scale with his personal use amount of marijuana does not establish trafficking. The district court acknowledged the "people use digital scales for personal use sometimes." <u>ROA.78</u>. The scale found with a personal use quantity of marijuana is not enough to show trafficking, and this Court has

never held otherwise.[12] The presence of a scale has indicated trafficking when the drugs involved were more serious than marijuana and were discovered along with other evidence of trafficking, such as cutting agents and large quantities of cash. *See, e.g.*, *Orozco*, 786 F. App'x at 18–19 (large quantity of methamphetamine and cocaine and thousands in currency); *United States v. Jernigan*, 745 F. App'x 238, 239 (5th Cir. 2018) (per curiam) (heroin, synthetic marijuana was found with several bags and cutting agents); *United States v. Hunter*, 543 F. App'x 374, 376 (5th Cir. 2013) (per curiam) (crack cocaine and marijuana were found with multiple scales in home of person with previous distribution convictions).

The remaining "evidence" of trafficking—i.e., the purported tip that Avila was distributing narcotics—is likewise unavailing. The factual basis for Avila's plea states that officers received information that Avila was in "possession of a firearm and narcotics."

---

[12] The probation officer cited *United States v. Bell*, 720 F. App'x 217 (5th Cir. 2018) to support the enhancement. The case is distinguishable. In *Bell*, "[t]he number of baggies with at least some amount of marihuana, along with a phone call in which Bell discussed having additional baggies before his arrest, supported a finding of current or recent drug sales." *Id.* at 218. The baggies and phone call contributed to a finding of distribution more than a single digital scale.

ROA.99. Insofar as the presentence report asserts there was a tip about distribution, it is not sufficiently supported by the evidence and does not merit the conclusion that Avila was distributing marijuana. The presentence report cannot "include statements, in the hope of converting such statements into reliable evidence, without providing any information for the basis of the statements." *United States v. Dabeit*, 231 F.3d 979, 983 (5th Cir. 2000), *overruled on other grounds by United States v. Reyna*, 358 F.3d 344, 347 (5th Cir. 2004).

Even if taken as true that the officers received a tip that Avila was distributing drugs, the veracity and reliability of that tip was wholly untested and lacked the necessary indicia of reliability. *See United States v. Kerr*, 876 F.2d 1440, 1446 (9th Cir. 1989) (holding on a sentencing issue that "mere statements of an anonymous informant, standing alone, do not bear sufficient indicia of reliability to support a finding of fact by a preponderance of the evidence").[13]

---

[13] *Cf. United States v. Jackson*, 818 F.2d 345, 348 (5th Cir. 1987) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1987)) (requiring consideration of an informant's veracity, reliability, and basis of knowledge to find support for probable cause for warrant).

The tip as described is also insufficient to show that Avila had previously carried a firearm while trafficking drugs. *See United States v. Clinton*, 825 F.3d 809, 814 (7th Cir. 2016) (finding enhancement was in error, in part because of the absence of evidence that the defendant was seen in possession of the firearm during prior alleged drug transactions). A tip alone does not transform an ounce of marijuana into a trafficking case, especially because Avila does not have a criminal record of drug trafficking and was using the marijuana. *Cf. Hunter*, 543 F. App'x at 376.[14]

Without evidence of drug trafficking, the §2K2.1(b)(6) enhancement could apply only if Avila's firearm possession actually or potentially facilitated a *felonious* drug possession. *Jefferies*, 587 F.3d at 693 ("we may only affirm the district court's application of the enhancement if it is 'plausible' in light of the record as a whole that [defendant's] possession of the firearm 'facilitated, or had the potential of facilitating,' the drug possession."). Avila was charged

---

[14] The case is also distinguishable from *United States v. Zubia*, 727 F. App'x 86, 87 (5th Cir. 2018) (per curiam), where this Court found a trafficking offense based in part on a confidential informant's detailed observations that the defendant had been observed with methamphetamine and a firearm in his waistband, in addition to other indicia of distribution. No such details about the "tip" were included in this record.

with simple possession of marijuana. ROA.108. Simple possession of two ounces or less of marijuana is a Class B misdemeanor in Texas, punishable by up to 180 days imprisonment. Tex. Health & Safety Code § 481.121(b)(1); Tex. Penal Code § 12.22; *see also* 21 U.S.C. § 844 (simple possession punished by not more than one year). That would not qualify as "another felony offense" for the purposes of the enhancement, because it is not "punishable by imprisonment for a term exceeding one year[.]" See U.S.S.G. §2K2.1, comment. (n.14(C)). Nor does any evidence suggest that the firearm, which Avila claimed was discovered that day, actually or potentially facilitated Avila's personal use drug possession.

The error of adding four additional levels under §2K2.1(b)(6) was not harmless. Without this enhancement, Avila's Guidelines range would have been 46 to 57 months. The Government cannot meet its heavy burden to establish that the sentence imposed "was not influenced in any way by the erroneous Guidelines calculation." *Alfaro*, 30 F.4th at 520–21.

### D. The district court plainly erred in applying the stolen firearm enhancement under §2K2.1(b)(4).

Because Avila should not have been held accountable for the three firearms in the backseat of the car, *see* Section II.B, it follows

that the district court plainly erred by enhancing his offense conduct under §2K2.1(b)(4) because the backseat guns were stolen. The error was obvious and affected his substantial rights. This Court should correct the error.

### 1. The district court's two-level enhancement under §2K2.1(b)(4) for possessing stolen firearms was plain error.

The presentence report included a two-level enhancement, stating: "If any firearm was stolen, increase by 2 levels[.]" ROA.105. Though not cited, the district court adopted the guideline enhancement under §2K2.1(b)(4). There is no evidence that the Glock—the subject of Avila's conviction—was stolen. ROA.103–04. Thus, the enhancement was based on the firearms discovered in the back of the vehicle. ROA.104. The application of this enhancement turns on the number of firearms involved in the offense. For the reasons set forth in Section II.B, above, Avila was accountable for only the Glock, which was not stolen. The error in applying §2K2.1(b)(4) is obvious.

### 2. The obvious error affected Avila's substantial rights because it resulted in a higher, incorrect Guidelines range.

Under the third prong of plain error review, a defendant must show that the error affected his substantial rights. *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016). That is, a defendant "must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Id.* (cleaned up). The Supreme Court has instructed that, "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Id.* at 198. Unless the case involves "unusual circumstances," a defendant "will not be required to show more." *Id.* at 201.

There are no unusual circumstances here, so Avila need not show more. Without the two levels for this enhancement, Avila's Guidelines range would have been 57 to 71 months, instead of the 60-month Guidelines range considered by the court. ROA.111; *see also* U.S.S.G. Ch.5, Pt.A (Sentencing Table). The erroneous application of §2K2.1(b)(4) affected his substantial rights.

41

### 3.  The Court should correct the error because it seriously affects the fairness, integrity, and public reputation of the judicial proceedings.

"In the ordinary case, … the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Rosales-Mireles*, 138 S. Ct. at 1911. This is such a case. The district court incorrectly applied the stolen firearm enhancement and, as a result, likely gave Avila a longer sentence than he would have received without the error. Correcting this error by remanding the case for resentencing "is a relatively low-cost measure." *United States v. Urbina-Fuentes*, 900 F.3d 687, 698 (5th Cir. 2018); *see Rosales-Mireles*, 138 S. Ct. at 1908. Absent "countervailing factors that otherwise further the fairness, integrity, or public reputation of judicial proceedings"—and there are none here—the Court should correct the district court's error. *See Rosales-Mireles*, 138 S. Ct. at 1910.

## Conclusion

For these reasons, this Court should reverse Avila's conviction. Alternatively, the Court should vacate Avila's sentence and remand for resentencing without the erroneously applied enhancements.

Respectfully submitted.

> MAUREEN SCOTT FRANCO
> Federal Public Defender
>
> s/ Kristin L. Davidson
> KRISTIN L. DAVIDSON
> Assistant Federal Public Defender
> Western District of Texas
> 727 E. César E. Chávez Blvd., B-207
> San Antonio, Texas 78206
> (210) 472-6700
> (210) 472-4454 (Fax)
>
> *Attorney for Defendant-Appellant*

## Certificate of Service

I hereby certify that on the 22nd Day of July, 2022, I electronically filed the Brief of Defendant-Appellant with the Clerk of Court using the CM/ECF system which will send notification of such filing to Ashley C. Hoff, Jr., U.S. Attorney for the Western District of Texas (Attn: Assistant U.S. Attorney Joseph H. Gay, Jr.), via electronic mail.

s/ Kristin L. Davidson
KRISTIN L. DAVIDSON
*Attorney for Defendant-Appellant*

**Certificate of Compliance with Type-Volume Limit**

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,137 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook.

s/ Kristin L. Davidson
KRISTIN L. DAVIDSON
*Attorney for Defendant-Appellant*

Dated:  July 22, 2022